# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal Action No. 6:04-cr-00022-JMC-1 |
| | ) | |
| v. | ) | |
| | ) | |
| Derrick Earl Miller, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant Derrick Miller's Motion for Compassionate Release/Motion to Reduce Sentence. (ECF No. 1040.) For the reasons below, the court **GRANTS** Defendant's Motion by reducing his sentence to 267 months.[1] (ECF No. 1040.)

## I.     RELEVANT BACKGROUND

On August 11, 2004, the Grand Jury returned a Second Superseding Indictment (ECF No. 344), charging Defendant with three (3) separate instances of armed robbery violating Title 18 U.S.C. §§ 924 and 2113. (*Id.* at 3–5.) After pleading guilty (ECF No. 184) on March 21, 2005, Defendant was sentenced to 754 months of imprisonment. (ECF No. 226.) He then appealed his conviction, but the United States Court of Appeals for the Fourth Circuit affirmed the court's judgment. (ECF No. 239.)

Defendant filed the instant Motion for Compassionate Release on September 4, 2020, asserting that his medical conditions make him more susceptible to serious illness and death due to COVID-19. (ECF No. 1040 at 2–3.) Defendant asks for home confinement for the remainder of his sentence.[2] (ECF No. 1040 at 4.) The court appointed counsel to represent Defendant regarding his Motion for Compassionate Release on September 8, 2020. (ECF No. 1041.) Defense

---

[1] By the court's calculation, Defendant has only served 222 months. Accordingly, Defendant is not being released pursuant to this order.

[2] Although the court is reducing Defendant's sentence, his request for home confinement is denied.

1

counsel filed a Memorandum in Support of Defendant's Motion for Compassionate Release (ECF No. 1040) on September 22, 2020, supplementing Defendant's assertions and adding the argument that the "stacking" of Defendant's 18 U.S.C. § 924(c) charges constitutes an extraordinary and compelling reason for reducing his sentence. (*Id.* at 1.) Defense counsel also provided Defendant's medical records showing that Defendant has been diagnosed with hypertension and glaucoma making him particularly susceptible to infection. (ECF Nos. 1052, 1052-2.)

On February 2, 2021, the Government filed a Response in Opposition (ECF No. 1114), asserting Defendant's medical condition and the changes to the § 924(c) stacking penalties do not entitle Defendant to a compassionate relief. The Government contends that Defendant's medical ailments are not extraordinary and compelling reasons for compassionate release according to the CDC. (*Id*. at 8–9.) The Response also addresses the changes in sentencing guidelines pointing out that defendants are not automatically entitled to a sentence reduction, the court may choose to do so if it finds extraordinary and compelling reasons. (*Id*. at 17–22)

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which provides a federal district court sentencing judge with jurisdiction "to consider a defendant's motion for reduction of sentence based on extraordinary and compelling reasons when the defendant has exhausted his administrative remedies." *United States v. Kubinski*, No. 3:93-CR-28-1H, 2020 WL 2475859, at *2 (E.D.N.C. May 13, 2020).

## III.     LEGAL STANDARD

With limited exceptions, the court may not modify a sentence once it has been imposed. 18 U.S.C. § 3582(c). One exception is the doctrine of compassionate release, which permits the court to reduce a sentence in extraordinary and compelling circumstances. "As amended by the

First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). "By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Id.*; *see also United States v. Kibble*, 992 F.3d 326, 330 n.2 (4th Cir. 2021).

"Extraordinary and Compelling Reason[s]" for release are—in part—defined in application notes (1)(A–D) of U.S.S.G. § 1B1.13. These reasons include whether (A) defendant suffers from a terminal illness, serious medical condition, serious functional or cognitive impairment, or deteriorating mental or physical health due to age which renders them unable to provide self-care; (B) defendant is a defined age or has served a defined percentage of their sentence; (C) certain family circumstances compel the court; or (D) there exists some "other" extraordinary and compelling reason. *See id.* The policy statement further provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . ." U.S.S.G. § 1B1.13 cmt. n.3.

As the plain language of § 1B1.13 applies only to motions brought by the BOP on the defendant's behalf, it is not applicable to motions for compassionate release brought by the defendant on their own behalf. *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020).

3

While the policy statements "remain helpful guidance" in evaluating defendant's own motions, courts retain the discretion to make their own independent determinations of what constitutes an "extraordinary and compelling reason[]" under § 3582(c)(1)(A). *Id.*; *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020).

After discerning whether extraordinary and compelling reasons exist, the court considers § 3553(a)'s sentencing factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the sentencing range established per the applicable guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id*.

Finally, the court may consider whether a person presents a "danger to the safety of any other person or the community" under the balance of four (4) factors: (1) the nature and circumstances of the offense, with attention to the instant crime's level of violence or involvement with a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed to any person or the community upon the defendant's release. 18 U.S.C. § 3142(g).

## IV.     ANALYSIS

A.     COVID-19 Pandemic

Initially, the court finds that Defendant has exhausted his administrative remedies. Defendant filed a request seeking consideration for reduction in sentence under the First Step Act with the warden at USP Florence ADMAX. (ECF No. 1052 at 4.) The request was denied by the warden, Defendant appealed, and the appeal was denied. (*See* ECF No. 1040-1.) Because the

4

appeal was denied on August 6, 2020, the required thirty (30) days has passed since the filing of his initial request, making his motion timely.

However, Defendant's present circumstances are not sufficiently extraordinary to merit compassionate release based on the COVID-19 pandemic. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841. The mere existence of COVID-19 in society, and the possibility that it may spread throughout a particular prison, alone cannot justify compassionate release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

After review of his medical documentation, the court finds that Defendant's health ailments are not severe enough to demonstrate extraordinary and compelling reasons for compassionate release. Defendant claims that he has a particularized risk of harm from contracting COVID-19 because he has hypertension and glaucoma. (ECF No. 1052 at 9.) While the Centers for Disease Control ("CDC") does list hypertension as a factor that could increase the risk of serious illness from COVID-19, it is not a certainty. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditi ons.html#MedicalConditionsAdults (last visited Aug. 1, 2022).[3] Moreover, glaucoma is not listed as a risk factor at all for serious illness from the virus.

---

[3] The court notes that for purposes of document formatting, the links to internet websites cited throughout the Order may have space(s) in the website URL where there should not be space(s). To this point, if the link is copied and pasted in a website browser, an error may result from the space in the website URL.

Currently, USP Florence ADMAX does not have any inmates who have tested positive for Covid and only nine (9) staff have tested positive. BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 1, 2022). The facility has had 65 inmates and 116 staff recover from Covid and no COVID-19 related deaths. *Id.* Additionally, the facility has determined its operational level is Level 3, so the facility is actively modifying operations to combat COVID-19. *See* BOP, *COVID-19 Operational Levels*, https://www.bop.gov/coronavirus/covid19_modified_ operations_guide.jsp (last visited Aug. 1, 2022). Due to the relatively low COVID-19 infection rate at USP Florence ADMAX, there is no reason to believe that Defendant would be any safer on supervised release than he is at his current facility. Ultimately, Defendant fails to show extraordinary and compelling reasons for compassionate release based on the COVID-19 pandemic.

B.    § 924(c) Stacking

Courts may consider substantial sentencing disparities to be extraordinary and compelling circumstances that constitute compassionate release. *See McCoy*, 981 F.3d at 285; *United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. 2020); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) (collectively holding that significant disparities between the sentencing that the defendant received compared to what the defendant would have received after the First Step Act warranted extraordinary and compelling circumstances).

In this case, Defendant has presented extraordinary and compelling circumstances. Although the First Step Act's retroactive changes do not implicate Defendant's original guidelines range, a gross disparity exists between the sentence Defendant received and the sentence he would have received after the First Step Act. Section 3553(a) lists the following factors that a court should consider during a defendant's sentencing:

6

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established; (5) any pertinent policy statement issued by the Sentencing Commission; (6) *the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553 (emphasis added).

In *McCoy*, the United States Court of Appeals for the Fourth Circuit decided that a large enough sentencing disparity of a pre-First Step Act sentence imposed under section 924(c), along with other relevant factors, could combine to authorize reducing a defendant's sentence based upon extraordinary and compelling circumstances. *McCoy*, 981 F.3d at 286. The Fourth Circuit explained that sentences imposed under section 924(c) are particularly troubling, as the formerly accepted practice of "stacking" sentences under this section could sometimes lead to "sentences . . . about twice as long as federal sentences imposed today for murder." *Id.* at 285 (citation omitted). The Fourth Circuit also highlighted the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." *Id.* (citation omitted). The Fourth Circuit emphasized that reviewing a compassionate release request requires "full consideration of the defendants' individual circumstances." *Id.* at 286 (observing defendants were between ages 19 to 24 at the time of the offenses, had spent half their lives in prison, and "had established excellent institutional records and taken substantial steps towards rehabilitation") (citations omitted).

Following a careful consideration of the record, the court shall grant compassionate release by reducing Defendant's sentence. First, Defendant has proven extraordinary and compelling

7

reasons exist to reduce his sentence. It is true that the existence of stacked § 924(c) sentences alone does not require compassionate release, but it is also true such sentences previously imposed under § 924(c) have been notorious for their "sheer and unusual length," and Defendant's sentence of 754 months is no exception. *See McCoy*, 981 F.3d at 285 (citing *United States v. Bryant*, No. CR 95-202-CCB-3, 2020 WL 2085471, at *5 n.8 (D. Md. April 30, 2020) (noting "the national average sentence for murder [in 2018] was 291 months")).

Further, a gross disparity exists with Defendant's sentence in particular. If sentenced today, Defendant would be facing 250 months to 267 months of imprisonment. Even a sentence at the height of Defendant's guideline range—267 months of imprisonment—would be less than half the sentence he received. The court finds the approximately 489 months—or 40 years and 9 months—of imprisonment beyond what "Congress now believes to be an appropriate penalty" amounts to extraordinary and compelling reasons for a sentence reduction in this matter. *See McCoy*, 981 F.3d at 285 (observing sentencing disparities of 200 months and 30 years before ultimately affirming compassionate release) (citation omitted); *United States v. Stockton*, No. 99-CR-0352-ELH, 2021 WL 1060347, at *15 (D. Md. Mar. 17, 2021) (granting a sentence reduction involving a 218-month sentencing disparity); *United States v. Ramos*, No. 04-CR-0293- PJM, 2021 WL 826304, at *3 (D. Md. Mar. 4, 2021) (granting a sentence reduction involving a 240-month sentencing disparity); *but see United States v. Hancock*, No. 1:06-CR-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021) (denying compassionate release, despite a 216-month sentencing disparity, after a particularized assessment of the defendant, but "leav[ing] open the door to a renewed motion in a few years").

Second, it is true Defendant has compiled disciplinary infractions while imprisoned. (*See* ECF No. 1114-2.) However, when Defendant committed the instant crimes, he was twenty-four

8

(24) years old.  He is now forty-two (42) years old and suffers from hypertension and glaucoma. Likewise, the court does not believe Defendant's criminal history makes him a danger to the community.  At the time of his sentencing, Defendant had a moderate criminal history resulting in a criminal history category of III.  Defendant has been in BOP custody since January 13, 2004. (ECF No. 226.)  In total, Defendant has served approximately 222 months of his 754-month sentence.  (ECF No. 1134.)  A reduction of his sentence to 267 months still serves as just punishment for the offense and, therefore, following a full consideration of Defendant's individual circumstances, and the court must avoid unwarranted sentencing disparities.

Third, additional factors under 18 U.S.C.A. § 3553(a) weigh in favor of reducing Defendant's sentence. The offenses to which Defendant plead guilty are certainly serious, and, although not causing apparent physical harm, his actions undoubtedly negatively and grievously impacted the victims. Yet, Defendant's imposed sentence was over double what it would be today. Defendant has already served more than seventeen (17) years, "a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence. It is also a period of time that promotes respect for the law and provides just punishment for his offenses." *Redd*, 444 F. Supp. 3d at 727.  The court thus believes Defendant's time served to date, coupled with the additional forty-five (45) months remaining in his updated sentence, reflect the seriousness of the offenses.

The court likewise seeks to avoid unwanted sentencing disparities like the one imposed upon Defendant.  After completing an individualized review, the court concludes there is simply no sufficient need for the length of the sentence imposed in 2005.  The court also observes that at the time of his sentencing, Defendant accepted responsibility for his conduct and was willing to cooperate with the Government.  (*See* ECF No. 232.)  In sum, considering the particularized

9

assessment and maturity of Defendant and the changed legal landscape, the court concludes Defendant's incarceration to date "is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation." *Stockton*, 2021 WL 1060347, at *15. The section 3553(a) factors thus weigh in favor of granting Defendant's Motion for Compassionate Release, and reducing Defendant's sentence to 267 months, the maximum sentence un the Sentencing Guidelines, in accordance with 18 U.S.C. § 3582(c)(1)(A)(i).

## V.    CONCLUSION

After a thorough review, the court **GRANTS** Defendant's Motion to Reduce his Sentence (ECF No. 1040) by reducing his sentence to 267 months.

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

August 2, 2022
Columbia, South Carolina